ELECTRONICALLY FILED - 2024 Jun 11 8:25 AM - NEWBERRY - COMMON PLEAS - CASE#2024CP3600342

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF NEWBERRY<br><br>Clinton Howard Berry,<br><br>                  Plaintiff,<br><br>v.<br><br>Goodwill Industries of Upstate Midland SC, Inc. d/b/a Goodwill,<br><br>                  Defendant. | IN THE COURT OF COMMON PLEAS<br>EIGHTH JUDICIAL CIRCUIT<br><br>**SUMMONS**<br>**(Jury Trial Demanded)** |

**TO THE DEFENDANT ABOVE-NAMED**:

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint herein, a copy of which is served upon you, and to serve a copy of your answer to this Complaint upon the subscriber at the address shown below within thirty (30) days (thirty five (35) days if served by United States Mail) after service hereof, exclusive of the date of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

                                              **CROMER BABB & PORTER, LLC**

                                              BY:  s/Shannon Polvi
                                                   Shannon Polvi (SC Bar #101837)
                                                   1418 Laurel Street, Suite A (29201)
                                                   Post Office Box 11675
                                                   Columbia, South Carolina 29211
                                                   Phone    803-799-9530
                                                   Fax       803-799-9533
                                                   ***Attorney for Plaintiff***

June 10, 2024
Columbia, South Carolina

ELECTRONICALLY FILED - 2024 Jun 11 8:25 AM - NEWBERRY - COMMON PLEAS - CASE#2024CP3600342

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF NEWBERRY<br><br>Clinton Howard Berry,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Goodwill Industries of Upstate Midland SC, Inc. d/b/a Goodwill,<br><br>　　　　　Defendant. | IN THE COURT OF COMMON PLEAS<br>EIGHTH JUDICIAL CIRCUIT<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

## EMPLOYMENT CASE

Plaintiff, complaining of Defendant herein, respectfully alleges as follows.

### PARTIES & JURISDICTION

1. Plaintiff, Clinton Howard Berry, ("Plaintiff") is a citizen and resident of Newberry County, South Carolina.

2. Defendant, Goodwill Industries of Upstate Midland SC, Inc. d/b/a Goodwill, ("Defendant") is a nonprofit organization that is headquartered in Rockville, Maryland, and has locations in several states, including South Carolina.

3. Venue is proper because Plaintiff was employed by Defendant in Newberry County, and the majority of the acts giving rise to this action occurred in Newberry County.

4. This action arises under the Americans with Disabilities Act and amendments thereto, ("ADA"), the Family Medical Leave Act ("FMLA"), and the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").

2

5. The Charge was filed with the U.S. Equal Employment Opportunity Commission, the right-to-sue letter was issued, and this action is timely.

6. The Court has subject matter jurisdiction over these claims.

**FACTUAL ALLEGATIONS**

7. Plaintiff is a former employee of Defendant. He was hired by Defendant on September 17, 2022, and worked at its store in Chapin, South Carolina.

8. In his role with Defendant, Plaintiff was responsible for accepting and sorting donations, pricing furniture, shoes, linens, movies, books, and other donation items, and placing these items on the store floor.

9. This position required Plaintiff to stand for long periods of time on concrete floors, and to move and occasionally lift objects.

10. Plaintiff has a disability related to his knees. He has meniscus tears, cartilage loss, and bone on bone conditions. Plaintiff's disability adversely impacts several day-to-day activities, particularly walking and standing.

11. Plaintiff's disability has worsened over time due to the amount of walking and standing that he had to do in his job with Defendant.

12. Medical professionals have previously told Plaintiff that he needs both of his knees replaced.

13. On June 27, 2023, when he arrived at work, Plaintiff needed assistance to get in and out of his truck because of the severity of the pain in his knees. Plaintiff still worked that day as he could continue to perform his job duties.

14. Later that same day, Plaintiff received a text message from his manager, Tom Brancher, asking for information from Plaintiff's doctors about what restrictions he was under.

15. Plaintiff later visited his family doctor who outlined the restrictions, including that Plaintiff could only stand for a set amount of time and could only sit for a set amount of time.

16. Plaintiff could still work with these restrictions. He can price merchandise and work the ADC door.

17. Plaintiff hand delivered his medical documents to his manager on June 29, 2023. He did not hear anything further.

18. Eventually, Plaintiff got a call from Jessica Hopkins, who worked in human resources for Defendant. Ms. Hopkins asked for more information pertaining to Plaintiff's disability.

19. In response, Plaintiff went to his orthopedic doctor, and gave the doctor's office permission to communicate with Defendant about Plaintiff and his disability. He also gave the doctor's office Ms. Hopkins' phone number. Defendant sent the doctor's office paperwork to complete, and then the doctor sent back the completed paperwork.

20. Some time passed with no word from Human Resources. Plaintiff reached out to the office with no response.

21. Plaintiff went into work several times to ask his manager for a status update. Plaintiff wanted to work but was not being placed on the schedule.

22. Plaintiff then took a copy of the paperwork from his doctor directly to his manager, hand delivering it to him on July 28, 2023. The manager read aloud to Plaintiff an email that the manager had sent to the regional manager asking what was going on. The regional manager said that there was no word yet.

23. Plaintiff then called the regional manager directly. He left a message on August 2, 2023. Plaintiff again called Human Resources with no response.

24. On August 2, 2023, Plaintiff got into contact with Michelle (last name unknown) at the regional manager's office. Plaintiff reiterated his desire to work. Michelle said she would send an email about Plaintiff getting back to work, and then reach back out to Plaintiff.

25. Plaintiff still was not scheduled to work, and his requested accommodations had not been approved. He then went back to Defendant's store in Chapin to see his manager in person. Plaintiff wanted to ask if he still had a job, because he had been sent a photo of the new schedule, which showed Plaintiff removed entirely and replaced with a new employee.

26. While speaking with the manager, Plaintiff respectfully expressed opposition to how he was being treated wrongfully because of his disability.

27. On August 7, 2023, Plaintiff again called Michelle in the regional manager's office. He wanted to get in contact with Defendant's benefits specialist to ask whether he still had health insurance as he was involuntarily out of work for more than one month. Michelle gave Plaintiff the phone number for Shaquanda (last name unknown). Plaintiff left Shaquanda a voicemail about his concerns, but never heard back from her.

28. Also on August 7, 2023, Plaintiff called Ms. Hopkins in the human resources department. He received no response. He also called the store where he worked with no response.

29. On August 11 or 12, 2023, Plaintiff again spoke with his manager about his concerns.

30. Later, on August 12, 2023, Plaintiff received a certified letter from Defendant stating that it had no place for him, and that it considered his medical restrictions as him voluntarily quitting.

5

31. Plaintiff did not voluntarily end his employment with Defendant. He was forced to seek accommodation for his disability and health condition related to his knee and then terminated by Defendant.

32. Plaintiff continuously represented to Defendant that he wished to remain employed.

33. Plaintiff was unlawfully denied reasonable accommodations, unlawfully placed on unpaid administrative suspension, and unlawfully terminated because of his knee disability in violation of the Americans with Disabilities Act, as amended.

34. Plaintiff was also placed on unpaid administrative suspension and unlawfully terminated in retaliation for his protected activities under the Americans with Disabilities Act, as amended, including requesting accommodations and opposing how he was being treated between June and August 2023.

**FIRST CAUSE OF ACTION**
**(Disability Discrimination, 42 U.S.C. § 12101 *et seq.*)**

35. Where not inconsistent herewith, the foregoing are realleged paragraphs.

36. Plaintiff had a recognized disability under the ADA.

37. Plaintiff had issues with both of his knees and sought reasonable accommodations for this disability, as described above.

38. While in the employ of Defendant, Plaintiff's knee condition worsened because of his employment. Such condition is a recognized disability under the ADA, and Plaintiff was treated for this disability during the time he worked for Defendant.

39. After his condition worsened while on the job, Plaintiff needed medical care and multiple doctor's appointments.

40. Defendant was on notice of Plaintiff's disability.

41. Defendant knew and/or perceived Plaintiff as disabled.

42. Plaintiff is, and was at all times relevant hereto, qualified and able to do his job.

43. Defendant did not allow Plaintiff to work while Plaintiff was seeking medical care for his disability, even though Plaintiff expressed his desire to get back to work multiple times.

44. Plaintiff notified Defendant that he was still able to work, but needed certain reasonable accommodations, including being able to sit more while completing job duties, and not having to do any heavy lifting.

45. Defendant told Plaintiff that there was no job for him after he requested reasonable accommodation to be able to work. Thus, Defendant failed to accommodate Plaintiff when he made reasonable requests for accommodation.

46. Defendant terminated Plaintiff because of his disability.

47. Defendant's disability discrimination of Plaintiff, failure to reasonably accommodate Plaintiff, and involuntary termination of Plaintiff's employment occurred because of Plaintiff's disability and are unlawful violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, and amendments thereto, for which Defendant is liable.

48. As a direct and proximate result of the violations of his civil rights under the ADA by Defendant, Plaintiff suffered actual damages in the form of lost wages and benefits and compensatory and other intangible damages, including the loss of his earning capacity, pain and suffering, and emotional distress. Plaintiff is entitled to an award of punitive damages for the willful and intentional acts of Defendant through its agents and employees, for pre and post judgement interest, tax offset for a lump sum award, equitable relief, attorney's fees, and costs.

## SECOND CAUSE OF ACTION
### (ADA Retaliation, 42 U.S.C. § 12101 et seq., and amendments thereto)

49. Where not inconsistent herewith, the foregoing are realleged paragraphs.

50. Plaintiff engaged in activities protected under the ADA by asking for reasonable accommodations for his disabilities. Defendant unreasonably delayed in responding to Plaintiff's requests for accommodations, and then effectively terminated Plaintiff, stating that it did not have a job that he could do.

51. Plaintiff's communications with several individuals in management positions with Defendant, including Tom Brancher, Jessica Hopkins, and Michelle (last name unknown), among others, constitute protected activities.

52. Plaintiff's request for changes to his job duties to enable him to perform his job was a protected reasonable accommodation request.

53. Defendant retaliated against Plaintiff by refusing to schedule him to work.

54. Plaintiff's protected activities are a but-for cause for his effective termination.

55. Defendant terminated Plaintiff in violation of the Anti-Retaliation provision of the ADA and caused Plaintiff damages that he is entitled to recover as a result of the same, including actual damages in the form of lost wages and benefits, and compensatory and other intangible damages, including pain and suffering and emotional distress. Plaintiff is entitled to an award of punitive damages for the willful and intentional acts of Defendant through its agents and employees, for pre and post judgment interest, tax offset for a lump sum award, equitable relief, attorney's fees, and costs.

### FOR A THIRD CAUSE OF ACTION
### (FMLA Interference)

56. Where not inconsistent herewith, the foregoing are realleged paragraphs.

57. Plaintiff is an eligible employee as defined by the FMLA and Defendant is an employer as defined by the FMLA.

58. The FMLA interference provisions under 29 U.S.C.A § 2615(a)(1) make it unlawful for any employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by the FMLA.

59. Defendant was on notice of Plaintiff's serious health condition and the foreseeable need for Plaintiff to need leave time from work.

60. Defendant unlawfully interfered with Plaintiff's exercise and attempts to exercise his rights under the FMLA.

61. In violation of the FMLA, Defendant failed to provide written notice to Plaintiff that his absence qualifies under the FMLA as required by 29 C.F.R. § 825.300.

62. Defendant failed to issue Plaintiff a "rights and responsibilities notice" required by 29 C.F.R. § 825.300(c).

63. Defendant failed to issue Plaintiff a "designation notice" required by 29 C.F.R. § 825.300(d).

64. These failures of Defendant prejudiced Plaintiff's rights and caused him harm.

65. As a direct result and consequence of the willful violation of the FMLA by Defendant, Plaintiff lost his job. Plaintiff suffered actual damages in the form of lost wages and benefits and compensatory and other intangible damages, including the loss of his earning capacity, pain and suffering, and emotional distress. Plaintiff is entitled to an award of liquidated damages for the willful and intentional acts of Defendant through its agents and employees, for pre and post judgement interest, tax offset for a lump sum award, equitable relief, attorney's fees, and costs.

**FOR A FOURTH CAUSE OF ACTION**
**(FMLA Retaliation)**

66. Where not inconsistent herewith, the foregoing are realleged paragraphs.

67. Plaintiff was a qualified individual under the FMLA and Defendant is an employer as defined by the FMLA.

68. Plaintiff's time out of work because of his disability was protected leave under the FMLA.

69. Plaintiff informed Defendant that he was able to work with certain restrictions on June 29, 2023. Then, by letter dated August 12, 2023, Defendant effectively terminated Plaintiff without allowing Plaintiff to return to work at all. This termination came soon after Plaintiff notified his employer that he was returning from medical leave protected by the FMLA.

70. As described above, there is a casual connection between Plaintiff taking medical leave and his termination.

71. Defendant terminated Plaintiff for exercising his rights pursuant to the FMLA.

72. As a direct result and consequence of the willful violation of the FMLA by Defendant, Plaintiff lost his job. Plaintiff suffered actual damages in the form of lost wages and benefits and compensatory and other intangible damages, including the loss of his earning capacity, pain and suffering, and emotional distress. Plaintiff is entitled to an award of liquidated damages for the willful and intentional acts of Defendant through its agents and employees, for pre and post judgement interest, tax offset for a lump sum award, equitable relief, attorney's fees, and costs.

**FIFTH CAUSE OF ACTION**
**(COBRA Violations)**

73. Where not inconsistent herewith, the foregoing are realleged paragraphs.

74. Defendant violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), by failing to provide Plaintiff with a timely COBRA notice that complies with the law.

ELECTRONICALLY FILED - 2024 Jun 11 8:25 AM - NEWBERRY - COMMON PLEAS - CASE#2024CP3600342

75. Plaintiff was a plan participant in Defendant's Blue Cross Blue Shield group health benefit plan (the "Plan").

76. The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute.

77. Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than twenty (20) employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event ... to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161(emphasis added).

78. The COBRA letter is required to provide important detailed information to individuals to allow them to make informed decisions about their healthcare options for themselves, and their family members that depend on them, before they lose health coverage. To that end, the Secretary of Labor identified important information that must be included in a COBRA letter as set forth in 29 C.F.R. § 2590.606-4.

79. To facilitate compliance with these notice obligations, the United States Department of Labor ("DOL") issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4.[1] The DOL website states that "[t]he Department will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."[2]

---

[1] https://view.officeapps.live.com/op/view.aspx?src=https%3A%2F%2Fwww.dol.gov%2Fsites%2Fdolgov%2Ffiles%2FEBSA%2Flaws-and-regulations%2Flaws%2Fcobra%2Fmodel-general-notice.docx&wdOrigin=BROWSELINK.
[2] https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/publications/an-employers-guide-to-group-health-continuation-coverage-under-cobra.

11

80. Plaintiff is a former employee of Defendant and received health coverage from Defendant. Plaintiff was thus a participant/beneficiary in the Plan before Plaintiff's termination, which constituted a qualifying event within the meaning of 29 U.S.C. § 1163(2), rendering Plaintiff a qualified beneficiary of the Plan pursuant to 29 U.S.C. § 1167(3).

81. Plaintiff was not terminated for gross misconduct.

82. Defendant failed to provide Plaintiff, a participant and beneficiary in the Plan, with adequate notice, as prescribed by COBRA, of his right to continue his health coverage upon the occurrence of a "qualifying event" as defined by the statute within forty-four (44) days. 29 C.F.R. § 2590.606-4(b)(2). As a result, Plaintiff lost health insurance coverage.

83. Defendant's failure to provide a timely COBRA notice to Plaintiff violates the law. Defendant failed to provide a timely COBRA notification to allow Plaintiff an opportunity to make an informed decision within the statutory time-period about Plaintiff's healthcare options.

84. These violations were material and willful.

85. In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1). In addition, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1). Such is the case here. Defendant failed to timely use the Model Notice and failed to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4.

86. Defendant has no administrative remedies Plaintiff was required to exhaust prior to bringing suit. Additionally, because no such administrative remedies exist, any attempt to exhaust the same would have been futile.

87. Defendant knew that it should have sent timely notice consistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, in deliberate or reckless disregard of the rights of Plaintiff.

88. Defendant's failure to provide a timely COBRA notice caused Plaintiff economic injuries in the form of lost health insurance and created economic barriers to Plaintiff's ability to access medical care. Additionally, the failure to provide a timely COBRA notice caused Plaintiff to avoid doctor visits, for fear of the costs associated with having to pay for medical needs out-of-pocket.

89. As a result of this violation, Plaintiff seeks statutory penalties, injunctive relief, attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Clinton Howard Berry prays for judgement against Defendant Goodwill Industries of Upstate Midland SC, Inc. d/b/a Goodwill, for the actual damages caused by the unlawful actions alleged in this action. Plaintiff is further entitled to punitive damages, equitable relief, and damages associated with the loss of Plaintiff's job, loss of earning capacity, loss of retirement and other benefits, and mental and emotional distress. Plaintiff last prays for a

pre-judgment interest on all damages, tax offset for a lump sum award, attorney's fees and costs of this action, and any such other relief as the Court may deem just and proper.

                    **CROMER BABB & PORTER, LLC**

                    BY:  s/Shannon Polvi
                          Shannon Polvi (SC Bar #101837)
                          1418 Laurel Street, Suite A (29201)
                          Post Office Box 11675
                          Columbia, South Carolina 29211
                          Phone    803-799-9530
                          Fax       803-799-9533
                          ***Attorney for Plaintiff***

June 10, 2024
Columbia, South Carolina

STATE OF SOUTH CAROLINA

COUNTY OF NEWBERRY

IN THE COURT OF COMMON PLEAS
EIGHTH JUDICIAL CIRCUIT

CASE NUMBER: 2024-CP-36-00342

Clinton Howard Berry,

      Plaintiff,

v.

Goodwill Industries of Upstate Midland SC, Inc., d/b/a Goodwill,

      Defendant.

**CERTIFICATE OF SERVICE OF SUMMONS AND COMPLAINT**
(Jury Trial Demanded)

   This is to certify that the undersigned employee of Cromer Babb & Porter, LLC, did cause to have served on the below date, a copy of the Summons and Complaint, by USPS certified mail, return receipt requested, restricted delivery, postage prepaid, to the Agent of Service for Defendant, above-named, at the below indicated address:

*Certified Mail/Return Receipt Requested*
*Receipt # 91 7199 9991 7037 2950 8498*
*Patrick Michaels, Agent of Service*
*Goodwill Industries of Upstate/Midlands South Carolina, Inc.*
*115 Haywood Road*
*Greenville SC 29607*

            **CROMER BABB & PORTER, LLC**

BY: *Jamie R. Mills*
            Jamie R. Mills, Paralegal
            1418 Laurel Street, Suite A (29201)
            Post Office Box 11675
            Columbia, South Carolina 29211
            Phone: (803) 799-9530
            Fax: (803) 799-9533
            E-Mail: Jamie@CromerBabb.com

June 11, 2024

ELECTRONICALLY FILED - 2024 Jul 12 9:54 AM - NEWBERRY - COMMON PLEAS - CASE#2024CP3600342

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Patrick Michaels, Agent for Service
Goodwill Industries
115 Haywood Rd.
Greenville SC 29607

9590 9402 7290 2028 1774 03

2. Article Number (Transfer from service label)

91 7199 9991 7037 2950 8498

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Barbara Sherman
☐ Agent
☐ Addressee

B. Received by (Printed Name)
Barbara Sherman

C. Date of Delivery
7-9-24

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☒ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☒ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt



USPS TRACKING #

9590 9402 7290 2028 1774 03

United States Postal Service

SP/JRM
Clinton
Berry

Agent for Service

1-167575

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Cromer Babb Porter
P.O. Box 11675
Columbia, SC 29211